JOHN H. BALLANTINE, ROBERT F. BALLANTINE and ABNER S. REEVES, executors &c., of PETER BALLANTINE deceased,

*v.*

GEORGE G. FRELINGHUYSEN et al., executors of PETER H. BALLANTINE, deceased.

1. The testator (P. B.), by his will, authorized and empowered his executors to continue his interest in the firms of "P. Ballantine & Sons" and "Ballantine & Company," and to form said firms into a joint stock company, or companies; to receive and hold stock in the same, in the place and stead of his interest or interests therein, for the benefit of his estate &c.

2. On bill filed for construction of the will—*Held*, that the executors were authorized to continue in the business of the firms all the property of the testator embarked therein at the time of his decease, including real estate owned by him individually and as a partner, and that held in trust by him for the firm.

3. That the executors have power to act in forming a corporation, and to convey thereto the testator's interest in the firms, which includes the above-named real estate; and to receive stock in proportion to his interest.

4. That in making such conveyance and appraisement, lands and buildings owned by him individually, but used by the firms in conducting their business so that they cannot be separated, for which rent was allowed, shall be valued at their fair present value, not as partnership, but individual property.

5. That lands owned by him which have been built upon and appropriated by the firms so that they cannot be separated in use from buildings on the lands of the firms, will be likewise valued as his, as of the time of appropriation.

6. That lands conveyed to the testator, paid for out of partnership funds and bought for the purpose of being used in the partnership business, in equity are held in trust, and form part of the joint estate of the partnership.

On appeal from a decree advised by Vice-Chancellor Van Fleet.

At the time of his death, January 23d, 1883, Peter Ballantine was a member of the firm of P. Ballantine & Sons, malsters and brewers of ale, and of the firm of Ballantine & Company, brewers of beer; the business of both firms being carried on at Newark, N. J. The firms were both composed of the same members; the former began business January 1st, 1857; the latter, about July 1st, 1879. The testator, Peter Ballantine, and his three sons, Peter H., John H. and Robert F., were the partners. Peter H. Ballantine died in September, 1882. After his death the business was continued in the same firm names, the executors (being his brothers, John H. and Robert F., and his son-in-law, George G. Frelinghuysen) having authority given them to do so by Peter H. Ballantine's will. The firm of Ballantine & Company was formed to add the brewing of beer to their former business of malsters and brewers of ale. All branches of the business were connected, and their great success was attributable to their policy of malting and brewing for themselves, which was commenced by Peter Ballantine about 1840, continued until his death, and since his death by the surviving partners. A number of very large and costly buildings have been erected and used by them; some by Peter Ballantine when carrying on the business alone, and others after his three sons were admitted as partners. The firm purchased lands, and added largely to the business, and buildings. The title to these was in all the members of the firms, while the title to the land and buildings formerly occupied by Peter Ballantine, remained in him up to his death, although large sums had been expended by the firms in improvements put upon them. A lot of land and buildings, known as the Trinity church property, because formerly leased of this corporation by Peter Ballantine, were afterwards purchased by the firms, though the title was taken in the name of Peter Ballantine. All taxes, assessments and charges against the lands and property, and all improvements in buildings and otherwise, were paid by the firms. These three

sons were the only children of Peter Ballantine, and the property used in their business was thus occupied without separation until his death. A small rent of $3,000 was credited on the books of the firm to Peter Ballantine from 1857, for the use of the original premises owned by him, and this was never changed. No written agreements for copartnership, or other arrangements of the business, were ever made between them.

Some time before the death of Peter H. Ballantine, the members of the firm had consulted and determined upon the formation of a joint stock company, or companies, for the more convenient management of the business of their two firms, by which the shares and interests of the respective copartners were to be represented by stock therein. An account and valuation of all the property, real and personal, had been made, preliminary to the formation of the contemplated incorporation. Before it was effected Peter H. Ballantine died, but by his will, dated September 15th, 1882 (article 10), he requested and authorized his executors to continue his interest in the business of P. Ballantine & Sons, and in Ballantine & Company, and that either or both of the firms aforesaid, be converted into joint stock companies, or a joint stock company, and that his interest therein be held by his executors, in trust, as therein provided. On September 21st, 1882, Peter Ballantine executed a codicil to his last will and testament, in which he authorized and empowered his executors to continue his interest in the firms of P. Ballantine & Sons and Ballantine & Company, and to hold the same for the benefit of his estate; and he further directed as follows:

"I hereby request, and authorize, and empower my executors to form either or both of the aforesaid firms into a joint stock company, or into joint stock companies, and to receive and hold stock in the same, in place and stead of my interest or interests therein, for the benefit of my estate, to be disposed of in accordance with the terms and provisions of my last will and testament, and the several codicils thereto, not inconsistent therewith " &c.

By another codicil, dated September 26th, 1882, after the death of his son, Peter H. Ballantine, he disposed of this son's portion of his estate in trust for his widow and children. Of this portion he says (article 2):

Ballantine *v.* Frelinghuysen.

"The principal sum, or any accumulation thereof, may be continued in the investment or investments in which it may be when received by the said trustees, or invested or re-invested in the firms of P. Ballantine & Sons, or Ballantine & Company, or any joint stock company or companies that may be formed as successor or successors thereto, or to either of them, as may seem to the said trustees desirable " &c.

Peter H. Ballantine left, surviving him, his widow and four children, viz., Sara L. B. Frelinghuysen, wife of George G. Frelinghuysen, Isabel A., Mary C. and George A. Ballantine. The last three are minors.

The executors of the last will and testament of Peter Ballantine, deceased, have filed this bill, praying that the true and proper construction of his will may be ascertained by decree, and that the nature and extent of their power may be declared, especially in relation to the conversion into stock of the said real estate standing in the individual name of Peter Ballantine at the time of his death, and used in the business of P. Ballantine & Sons, and direction in the premises before proceeding with the formation of such incorporated company or companies, or making permanent provision as to the continuance of the business. Vice-Chancellor Van Fleet was of opinion that it was the intention of the testator, Peter Ballantine, to continue the business of the firms as at the time of his decease, and that his executors should be held authorized to continue in the business all his estate and property embarked therein at the time of his death, by whatever title held; that he did not intend to withdraw from the business any part of his property thus included in it; and also, that for the purpose of continuing the business, they were authorized to convey to a joint stock company or companies to be formed in the manner and for the purpose stated in the bill, all of the estate thus used, including real estate owned by him individually, and as a member of the firm and in trust for the firm. A decree was made according to this opinion.

From the whole of this decree an appeal has been taken in behalf of the infant devisees and heirs of Peter Ballantine, being the minor children of Peter H. Ballantine, and his grandchild

named in his will, and by the executors of Peter H. Ballantine, deceased, to a part of the decree.

Mr. A. Q. Keasbey, for appellants.

Mr. John R. Emery, for respondents.

The opinion of the court was delivered by

SCUDDER, J.

This suit is an amicable action brought for the protection of the executors and trustees in the last will of Peter Ballantine, deceased, in carrying out the provisions of his will, and of the codicil of September 21st, 1882, which provides for the continuance of the business of the firms of P. Ballantine & Sons and Ballantine & Company, and of the codicil of September 26th, 1882, and in the formation of a joint stock company or joint stock companies for that purpose. It was supposed that there might be some limitation in the words used in the first codicil that would make the intention of the testator uncertain whenever it was thought desirable to form such company or companies. The words that caused the doubt were that the stock to be received and held was to be " in place of my interest or interests therein;" that is, in either or both of the aforesaid firms which were to be formed into a joint stock company or companies. It is said that this' may mean only his actual investment in the property, real and personal, held in the name of either or both of said firms, and may not include the real estate of the testator which has been used and occupied by these firms. It has also been questioned whether all of the real estate standing in the name of Peter Ballantine has not become copartnership property. It was the manifest purpose of the testator to continue and promote the business which he had begun—which he and his sons had so greatly enlarged—and not to destroy it. Very large and costly buildings have been placed on his lands and on the lands of Ballantine & Company, and these are so connected in use as to be inseparable. In one case, twelve

feet of a large brick building has been extended over the line of land owned by him separately, and all of it used together. Take, as an instance of such use, the testimony of Mr. Robert F. Ballantine concerning two others of these buildings thus connected:

" *Q.* Was the building put on that lot purchased by P. Ballantine & Sons connected in its use with the building which had been previously erected by Peter Ballantine on the leasehold premises?

" *A.* It is indissolubly connected.

" *Q.* So that it is impossible for the two to be used separately?

" *A.* It is impossible so to use them.

" *Q.* Just explain to the court how that is?

" *A.* At the eastern end of the building the process of malting is begun and is carried on to a point where it is necessary to place the malt in kilns, which are between these two lines—between the lines marked A D and the dotted red lines; the malt, in its progress from the time of steeping, reaches finally the kilns where it is to be dried; after it is properly dried in these kilns, it is discharged into the store-house end of the building, as we call it, and there is no other place to put it, so that it is impossible to carry on the business of malting in that building, the original malt-house building, without the use of the store-end of the building."

It is also testified that the attempt to separate the malting and brewing, which would occur if the land of Peter Ballantine occupied by the firm were taken from them, would damage the business forty per cent. In view of such facts as these, and the close relationship of these copartners, we must conclude that when the testator spoke in his will and codicils of continuing this business, he intended it to be done as it was then conducted, with all its advantages for profitable use and production, and that the malting should be used in connection with the brewing, both of the ale and beer. His interest in these firms was not represented alone by the investment in the lands and improvements, of which the title was held in the names of the firms, but by the entire plant of land and buildings, with all the machinery and appliances by which they were enabled to carry on the business successfully. These portions of the testator's lands occupied by buildings and used in connection with other buildings on the lands of the firm, had become part of his interest in the firm, and their chief value to him was their connection with the firm busi-

ness.   They had become so substantially involved in the business that they would be naturally spoken of as part of the interest of each partner in the firm.

While it is said in *McNeillie* v. *Acton, 4 De G., M. & G. 744, 753,* that a direction in the will that the testator's trade shall be carried on, does not of itself authorize the employment in the trade of more of the testator's property than was employed in it at the time of his decease, it does authorize the executors to continue it by means of the property, capital, stock and effects which were embarked and employed therein at the time of the death of the testator.   That part of the testator's property, both real and personal, which is engaged in the business and which is reasonably and fairly necessary to the full accomplishment of his scheme, must be intended when he speaks of the continuance of the business and of his interest in the firm.   *Ferry* v. *Laible, 4 Stew. Eq. 566 ; S. C., 5 Stew. Eq. 791.*

The proposed change of the form of business from a copartnership to a corporation carries with it all the property and incidents of the business unless otherwise expressed.

As to the leasehold lands conveyed by the Trinity church corporation to Peter Ballantine, these having been purchased with the partnership funds, became in equity part of the partnership property.   *Smith* v. *Smith, 5 Ves. 189 ; Dyer* v. *Clark, 5 Metc. 562.*

In *Bank of England Case, 3 De G., F. & J. 645, 659,* it is said that where land purchased is not merely paid for out of the partnership assets, but is bought for the purpose of being used and employed in the partnership trade, it is scarcely possible to conceive a case in which there could be sufficient evidence to rebut the trust, and accordingly in those cases we find the decisions almost, if not entirely, uniform, that the purchased land forms part of the joint estate of the partnership.

The lands and buildings owned by Peter Ballantine before either firm was founded, known as malt-houses Nos. 1 and 2, together with the lots of land whereon the same are erected, were not bought for the partnership, nor with partnership funds.   He was not credited in the books of the firm with the value of these

Ballantine *v.* Frelinghuysen.

buildings and land as part of his capital contributed to the firm and invested in the business, but he was paid rent for their use as his own individual property.   This continued until his death, and fixes the character of this property.   For this his estate should be allowed its fair present value in stock whenever the change is made from the co-partnership to a corporation.

In *Robinson* v. *Ashton, L. R. (20 Eq.) 25,* on the formation of a partnership it was agreed that the business should be carried on at a mill belonging to one of the partners, and he was credited in the books of the partnership with the value of the mill.   In the absence of any special agreement, the mill was held to be an asset of the partnership.   Here a different intention is shown by the acts of the parties in the payment and receipt of rent.

As to the portion of the real estate standing in the name of Peter Ballantine, deceased, upon which a portion of the malt-house called No. 4 was built by the firm of P. Ballantine & Sons, being about twelve feet on the southerly portion of the same, the building and improvements put thereon with the money of the firm greatly increasing its value, and devoting it to the business of the firm, show an intention at that time to make it partnership property.   In making a division of the partnership property, the estate of Peter Ballantine should be allowed the value of the land at the time of its appropriation by building thereon, but the increased value will be divisible among the co-partners in proportion to their respective interests in the profits of the business from which the funds for the improvements were taken.

The decree is in all points affirmed.

*Decree unanimously affirmed.*